We'll hear argument next in Case 12-729, Heimeshoff v. Hartford Life & Accident Insurance. Mr. Wessler. Thank you. Mr. Chief Justice, and may it please the Court. This case involves an accrual provision in an ERISA plan that starts the clock running on a federal denial-of-benefits claim near the beginning of ERISA's mandatory internal claims process, before the federal claim ever exists or could be filed in court. This provision directly conflicts with ERISA's two-tiered remedial structure, which is designed to maximize the number of claims that are resolved internally without lawyers in courts. Respondent's provision undermines this goal by making it impossible for anyone to know in advance how much time will be left on the limitations clock after the internal process is complete. How much time was left in this case? There was approximately one year, Your Honor. And if there were a one-year limitation running from the final administrative review, you would be out? Well, I don't think we would be out in this case, Your Honor, because the provision in this case was a three-year from final denial. Going forward, if, in fact, ERISA plans had a one-year clock running from final denial, everyone would know that they would need to file their claim within one year after final denial. But if there were such a rule, one year from the final administrative decision, this claim would become too late. If, in fact, the provision in this plan said one year from final denial, that's correct, Your Honor. What accounts with the delay? When the clock was running and more than a year went by before the suit was instituted, why was that? Why did that happen? Well, I think this gets us, Your Honor, to one of the core problems with this provision, which is that it's confusing. It is unclear. One of the key questions with these provisions, when they're coupled with the mandatory exhaustion requirement, that is actually quite uncertain when proof of loss is due. And so below, one of the key questions, which actually still remains unresolved, is when the clock actually started ticking. But I think there's a more fundamental problem. Sotomayor, I thought the court below said that that was irrelevant to the resolution of this case. That even if they accepted your date for when the proof of loss started, that you would still lose. In this case, Your Honor, that's true. However, the problem with these proof of loss dates, coupled with this mandatory exhaustion requirement, is that it is unclear from the outset when the clock, how much time after final denial will be left when you're in the middle of the process. And on this question of proof of loss, I'm a little confused because it would be the same rule we instituted. I don't think that's right, Your Honor. Sotomayor, you never know when the administrative – you really never know when the administration process is final, just like you're arguing you don't know when the proof of loss date is final. But at least the advantage of proof of loss, you know you've got 3 years from at least the beginning of the process. Right. Although, there's actually quite a bit of disagreement among the lower courts about how you measure proof of loss, when that date actually triggers the limitations clock. So, for instance, in the Seventh Circuit, the Court has held that proof of loss starts the clock ticking the first time proof of loss is due under the plan, which is the first set of documents that a claimant actually provides to her plan supporting her claim for disability. The plan, however, through this internal process, can come back and ask for more documents, more evidence supporting the disability. And if the claimant then provides those additional documents, that could conceivably reset the limitations clock under the proof of loss requirement. That can only help you. It gives you more time, but it doesn't take time away from you. That's true, Your Honor. You have 3 years, no matter what. From the first date, you have 3 years. Well, in fact, you need more time, you have a potential out. Well, in fact, you don't have necessarily 3 years from when proof of loss starts, because courts, as Respondents themselves acknowledge, are necessarily going to have to evaluate these provisions on a case-by-case basis. Scalia. Well, you know, I guess there are answers to these legal questions, whether it's the first filing or if supplemental documents are required, it's the second filing. There's an answer. You know, some court will provide the answer. The mere fact that provisions in a contract are subject to various interpretations doesn't make the provision invalid. It means something. We just don't know right now what it means until a court provides the answer. But, wow, that's not different from any contract. Well, except, Your Honor, that in ERISA, one of the core goals of this statute is to provide predictability, certainty, and efficiency in the administration of benefits. And so to have courts being placed in the center of what should be a straightforward and streamlined process undermines the way Congress intended this benefits administration process to proceed. And if you place courts exactly in the middle of this where they're going to necessarily be policing the enforceability of a limitations provision before they ever get to the question of were the benefits properly denied, you're undermining the nature of what this private process is supposed to be. It was supposed to be intended to allow the parties to privately resolve their benefit claims without lawyers in court. Ginsburg. And it's generally assumed that, therefore, the State statute of limitations would govern, and if a State has the position that parties can contract the statute of limitations, I mean, ERISA does have a statute of limitations for breach of fiduciary claims, right? That's correct, Your Honor. And it has none for this kind of claim. That's correct, Your Honor. And I think it was reasonable for Congress to expect that the – that for these denial-of-benefit claims, we would look to State law to determine the length of the period. But when that period starts running, and that's what's at stake here, is when the limitations clock starts running was not a question that we would look to State law for. Rather, it's a question of Federal law. When does the claim actually become ripe? When can you file it in court? And what we have here is a limitations provision that includes an accrual date that starts the clock running, not just before when you can file it in court, but before there's ever even been an injury. Alitoso, doesn't have a statute of limitations, doesn't specifically set out a statute of limitations for this type of claim, but it does have a savings clause that says it doesn't preempt State laws that regulate insurance. So what would happen in this situation? Let's say a State statute says essentially what the plan at issue says. It says that a claim for the incorrect denial of insurance benefits must be brought within three years after the proof of loss. And now, let's assume we agree with you that under ERISA, any statute of limitations for the denial of benefits must begin not when the proof of loss must be filed, but upon the denial of benefits. Does it follow, then, that the rule that you're advocating would mean that ERISA preempted the State law that regulated insurance in the way that I just specified? I would think it would, because it would conflict with ERISA's remedial structure. I would stress here that in this case, we know that these State laws don't apply to Respondent's provision. They themselves have made that clear in their opposition brief. Most State laws, however, actually include language to the effect of that insurers can use these kinds of proof of loss languages or something similar so far as it's not any less favorable. Alitoso, I think your answer to that question has to be yes, otherwise the situation would be a mess. Yes. Yes. But in what sense is the law that I hypothesized not a law that regulates insurance? So why wouldn't it fall within ERISA's savings law? It might as a first step, Your Honor, but I think it would be impliedly conflicted because it conflicts with the Federal structure of ERISA. And the key point about these State law provisions, which is, I think, where this provision comes from in Respondent's plan, is that these State law insurance regimes do not require mandatory exhaustion of any internal claims process. Your clock starts running at proof of loss, and so long as you wait a 60-day waiting period, you can then file your claim in court regardless of whether the insurer has actually acted on your claim. That is not true here. Claimants do not have the ability to file their claims in court until they have exhausted this mandatory process. Kennedy, is there any evidence in other circuits that have this same rule that the approach the Respondents advocate has caused difficulties and disruption and unfairness? Well, I think we've seen courts struggling with a host of questions about how to resolve the enforceability of these provisions. As just an example, we know that courts are in the – are having now to be in the business of asking whether the party's conduct during this internal process has caused some waiver or estoppel of the limitations provision. That kind of inquiry, an estoppel kind of inquiry, is a fact-based inquiry about whether the plan's conduct in the internal process was unduly reasonable. But in this case, as Justice Ginsburg indicated at the outset, there was a period of, I think, just over a year, and which was very, very clear that the administrative process has ended and nothing happened. I don't see the unfairness in the application of the rule in this case. Yes, Your Honor. But I think the core problem here isn't so much one of unfairness as it is certainty and predictability of what employees and plans' rights are under an ERISA plan. Well, but there's also certainty and fairness in processing the claim. And when evidence is lost, especially in cases where employees, where key witnesses have likely departed, that's another very important consideration. Absolutely, Your Honor. But to be clear, there is nothing about Respondents' provision that advances any of those goals any more than running a limitations clock one year from final denial. As this Court has said, the internal claims process itself provides notice to all of the parties about the possibility for claims and critically preserves all of the evidence that the plaintiffs' claims are not in violation. Breyer, what happens if you brought suit before the exhaustion, while it was still exhausting, so we don't want to hear the case until that's finished, can you do that or not? I think that is a very open question. I do not know the answer. It's an open question. So then if it were held that you could do it, you could file the lawsuit within the 3 years, and if the exhaustion had not taken place, well, just don't hear the case until the exhaustion does. That would solve your problem. I think it would, but I also think that would not solve your problem. Because you waited too long, but I mean, that would solve the problem of other people in the future in your situation. Correct. It would create a vehicle for protecting the claimant's rights and providing certainty. Well, what is it that stops that? I mean, on that ground, you would say these clauses are valid. It's valid to say he has to, you have to bring lawsuit within 3 years. Nothing wrong with that. File a protective complaint. Absolutely, Your Honor. But that gets lawyers and courts involved in a process that should be private. The ERISA's internal benefits process, it processes millions of claims a year. If we have lawyers turning what should be a non-adversarial private process into one that is adversarial and that allows for the possibility of filing protective actions in which we ask the Federal court to stay a potential Federal claim that may never exist, while we're in this indeterminate, flexible process, the courts would be brought directly into a process that should be private. Sotomayor, if we rule in your favor, I'm sorry, against you, and just say the plans can do this, do you see any reason why the government couldn't pass a regulation saying you've got to give people at least a year from the end of the administration process to file? I can't speculate on what the government would do. I don't actually know if they would have the authority to do that. They're regular. I'm going to ask them that question. I'm sure you are. But are you aware of anything that would stop them from doing that? I am not. Their regulations, what they have now, addresses the internal claims process. It doesn't address the rights that exist when you get to Federal court. Sotomayor, if we rule in your favor, however, they would be stopped from passing a regulation requiring something different than what we say, correct? I would think that that's right. I mean, I think a rule of accrual that the limitations clock starts running at final denial is exactly the kind of uniform and clean rule that everyone can rely on ex ante from the outset across the board in every jurisdiction in the country. Mr. Wessler, this just, I think, follows up on Justice Kennedy's question, but have you identified any cases in which this serves to prevent somebody from bringing a suit? We have not found any cases in which a claimant has actually lost the right to file a suit. The problem isn't so much in the – in that possibility. The problem is in what we do see, which is where there are three or four or two or five months left after final denial on the clock, and courts are now in the business of having to evaluate, does that give enough time to the claimant to do all the things that she needs to do to file a claim. But it seems as though those courts have been pretty liberal in saying whenever it's necessary, no, take a little bit more time. So, you know, this seems just a little bit like a solution in search of a problem. I think, in fact, it's just the opposite. Running the clock during the internal process, ex ante, no one knows where they will be at the end. This process is indeterminate. We want the parties to take all the time they need to work it out. I didn't understand your response to Justice Breyer's question, Mr. Wessler. I don't see how a Federal court that simply stays its – stays its hand, abides the termination of the administrative proceeding, is in any way engaging in any kind of adversary process. Wessler, It's – with respect, Your Honor, it's not the court that's engaging in the adversarial process. It's the private internal claims process that is supposed to be non-adversarial that has now become adversarial, because there's now a lawyer involved who has advised her client that she must file a protective action to avoid the possibility that she will lose her claim. We don't – Ginsburg, Yes, many people in the administrative process aren't represented, but some are, right? Wessler, That's right. But we think that this provision would incentivize more lawyers getting involved, because if you're uncertain about how much time you'll have, you'll be in a position where you want advice. This provision breeds confusion, and when we're confused, we look for help. And the help that's going to come into this process are lawyers who are going to take the kinds of strategic action that Justice Breyer suggested and involve the courts in what should be a private process. That, in and of itself, drastically undermines the point of this Internal Benefit Administration and just amplifies and magnifies the litigation costs associated with it. If I could reserve the rest of my time. Roberts, Thank you, counsel. Ms. Anders. Anders, Mr. Chief Justice, and may it please the Court. The limitations provision in Respondent's plan deviates from bedrock Federal limitations principles in a way that undermines ERISA's two-tiered remedial framework. Congress enacted that remedial structure, which requires mandatory exhaustion before judicial review, against the established limitations principle that the limitations period begins to run only when the cause of action accrues. In other words, here, when exhaustion is complete and the plan has rendered its final decision. Alito I find it very hard to answer the question that's presented here without knowing the answer to the preemption question that I asked Mr. Wessler. And I know you refer to it in a footnote in your brief, and you say that the type of State statute to which I referred would likely be preempted. And I can understand why you wouldn't want to go further than that on that question in a case where that question isn't squarely presented. But if it's not presented, then I think we would be creating an incredible mess that Congress would not have intended. So I really don't understand how I can answer the question here without knowing the answer to the question there. I think that's right, and I think State laws that require plans to have this sort of provision would be preempted. They may fall within the Savings Clause, but as this Court has said, even statutes that are within the Savings Clause are still subject to ordinary conflict preemption principles. Kennedy, those are general statutes, so they would be preempted just in this class of claims. The lawyers would have to know that this statute is still valid for many purposes, but not for ERISA. Well, it may be valid for many State law purposes, but when a plan is regulated by ERISA, ERISA's remedial framework establishes the limits of what that plan can do. Kennedy, but then you have lack of uniformity within the State on when these claims must be brought under an insurance policy. I don't think there would be any more lack of uniformity than there is already. In fact, most of these State laws, they actually require plans to provide substitute language that would be at least as favorable to the insured. So, for instance, you could have a plan, a plan could easily remedy the problem we have here by saying our limitations period runs from 3 years from proof of loss or 6 months from the plan's final determination, whichever is later. That would be an easy way for a plan to both uniform and avoid the problem that we have here, which is undermining ERISA's remedial framework by setting the two counts of. Scalia, it hasn't undermined the framework. I mean, the Petitioner had a year. I mean, I can understand if finding that a particular case is not filed too late when, indeed, there was no time to do it. But here they had a year. Why does that undermine the framework? If and when they don't have enough time, the Court can say the suit is not precluded. In this case, we now know post hoc that the Petitioner had about a year. But the problem with this framework is that it actually sets the required exhaustion procedure under 1133 and the required judicial review under 1132 against each other, because a claimant who is going through exhaustion is not going to know while she's going through the exhaustion process how much time she's going to have remaining. Kagan, what evidence do you have that any bad incentives, you know, any bad effects are actually flowing from this? There's actually a big leeway in this statute because it's 3 years. The administrative review process only takes about a year. Even if this is a complicated case where there's some tolling, you know, maybe it gets you up to another year, you still have a year. I mean, what – how would people behave badly or behave in ways that you think would disrupt the statutory scheme if we just let everything stay as it is? Well, first, I think there is evidence that there have been – that there have been problems created by this kind of scheme. There's an example of a case in which exhaustion took 4 years. This is an iterative process. The Department of Labor's regulations, of course, mean for mainstream cases to be resolved in about a year, but you can always have cases, you know, these are situations in which you need medical exams, you need test results, you need written reports. Either side can meet in a year. In practice, how often is that the case, that the guidelines set by the Department of Labor are not met? I don't have precise statistics, but the regulations are designed to be flexible precisely because there will often be cases in which one or the other side will need an extension. And so there are many cases, or at least there are some cases here where if the limitations period is 3 years, it takes – it has taken over 2-1⁄2 years for exhaustion to occur. So the plaintiff is left with about 5 months to sue, and then there's a question about whether that's reasonable or not, which leads to collateral litigation. There are some cases where the statute of limitations is only 1 or 2 years. Sotomayor's counsel, I could be more troubled by this case if the proof of loss provision required a suit to be brought in a year, because as I'm adding up the timeframe, it's about 15 months if no exceptions are made for the administrative process. Could you answer my question on whether you see any impediment if we rule against you in this case to the Department saying something like you've got to give at least a year from the finality of the administrative process? Could you pass such a regulation later? I think the Department of Labor would have that authority to do that. I mean, we think the statute is clear right now that, you know, several provisions – there are several concepts here that I think are very clear. One, this is mandatory exhaustion in the statute. Two, Congress enacted the statute against the traditional limitations rule, which means that the statute runs from the date of accrual, and deviating from that would undermine the structure by causing the limitations provision to work in a way that limitations provisions never do. Limitations provisions are designed to create certainty for both parties so that you know when you have to bring suit. But the question is, there is a division in the courts of appeals, and the question is, could the Department of Labor, by regulation, resolve the matter one way or the other? Does it – even if it thinks the statute is clear, the courts obviously don't because most go the other way. So given that most courts go the other way, does the Department of Labor have authority to adopt a regulation that would adopt the accrual rule? We do think it would have that authority, and it has that authority because it has the authority to regulate the claims process and the procedures. Well, that's the internal claims. Do you know any other instance in which when a suit can be brought in Federal court will be determined by an agency? An agency saying you've got to sue within 1 year, you've got to sue within 6 years? Offhand, I can't think of any, and I think it goes well beyond what the executive is authorized to prescribe. Well, we do think the agency would have the authority here because we think that the statute of limitations, when the statute of limitations runs from, is intertwined with the effectiveness of the claims procedure. So because we think that the – that having the limitations provision run from before exhaustion even starts undermines the efficacy of the claims procedure, the Department of Labor would have the authority to protect the efficacy of the claims procedure. Do you know any other instances where a Federal agency has, in effect, prescribed the running of a statute for the courts? Maybe there are some, but I don't know of any. I can't tell you right now. I'm not sure that there aren't any such provisions, but we do think that the Department would have the authority here. I guess one question is if you think you do have the authority and you think that the majority rule has been creating problems, why the Department of Labor hasn't done that? Well, the Department focused in 2000, the last time it regulated, it chose to focus on matters that were directly involved in the claims process itself. It hasn't regulated since then, but its position is that the statute does not permit plans to deviate from bedrock limitations principles like this and undermine the remedial scheme. So its position is reflected in our brief, and we think it could regulate. If we agree with you, would a State legislature have the authority to pass a statute setting out a particular, a specific statute of limitations for ERISA claims? I think it might have the authority to do that, so long as the statute were framed in a way that didn't undermine the remedial framework. Yes. Ginsburg. What is your position on Justice Breyer's suggestion that the trigger can be proof when you file proof of claim, but if it happens that beginning a suit at that point would, while the, while the administrative review process is underway, why not say you have to follow the time of filing, but if the administrative process, in your case, the 4-year, it took 4 years, just hold the suit in abeyance until the administrative process is complete? I think that would be kind of a bizarre scheme that would turn the exhaustion process and the point of exhaustion on its head, and that essentially would require a rush to court by claimants who don't know yet whether the exhaustion process will be resolved in their favor, and the point of exhaustion is, is to avoid unnecessary suits like that. So I think it has that problem. It also is not clear that every claimant is going to know to file a protective suit. And our saying that, and what about our saying to the courts, it's a judge-made doctrine, exhaustion has to conclude in enough time so that they have time left to file a lawsuit? I'm sorry, if you were to rule that? Yeah. Because isn't exhaustion a judge-made doctrine? It is a judge-made doctrine, but I think it's an unfair process that doesn't leave them a reasonable amount of time to file a lawsuit. Well, I think in this case, exhaustion is established by statute, it's required by statute, and by the regulations. And so, you know, I think in this case, the problem is that the statute of limitations starts running well before the exhaustion process is complete, and therefore damages the efficacy of that process. Thank you, counsel. Ms. Garrell. Thank you, Mr. Chief Justice, and may it please the Court. Subject to State insurance law, ERISA gives employers broad leeway to choose the terms on which they agree to provide benefits. And a suit for benefits due under an ERISA plan can seek only to enforce those agreed-upon terms. They don't have to provide benefits at all, do they? Exactly. But one of Congress's purposes. And if they do, they do it on their own terms. That's correct, Justice Scalia, and that was one of Congress's overarching purposes in enacting the statute. I suppose the problem here is that we have found nine cases, actually, you know, we can do computer-assistant research, which my clerks are good at. And they found five cases in which the exhaustion period was actually longer than the 3-year statute of limitations. And then they found four others that were, well, there was like five days left in one and there was five months in another. And in most of, almost all those cases, the judge got around the problem by saying the statute begins to run at the time the exhaustion is finished. Now, I can think of other ways of solving the problem. One was you get a reg. Another way was that we interpret the exhaustion doctrine to require leaving at least a year. But what's your way of solving the problem? Are you just going to let those nine people just they can't bring their lawsuit or what? Well, I think when those situations arise, and to be clear, we have 40, almost 40 years of experience under ERISA of these provisions coexisting with the ERISA remedial framework. And in that time period, to come up with, I recall, was it five or nine cases? The question was what do you want to do with those nine people? Now, I know there are a lot of ERISA cases, but still there were nine people who will have this problem. And my question is what do you suggest we do about them? In the highly unusual circumstances where those situations arise, and we don't have any reason to believe they are anything but highly unusual, we think courts are well prepared to apply the equitable doctrines that courts have always applied to statutes of limitations when situations like that arise. I think my friend referred to a case of the Levantia case, and I think that's a good question. Breyer. My question was what specific doctrine, or I saw three routes, now you can name some others, and we do about those nine people precisely, not in some general terms, but we do what about them? In the Levantia case cited in the reply brief, the doctrine that was applied was equitable estoppel, because in the facts of that case, you couldn't get to a 4-year point without a final decision, without something having gone wrong. And in that case, there was. Breyer. And I suppose you could use equitable estoppel, even though nobody said anything, even though nobody held out anything as a basis for estoppel, but we could say use equitable estoppel. I'll think about that one. Is there any other thing we could use? There are many. I want to be clear. Estoppel applies where the facts support it, as do equitable tolling, as do the several provisions in the Department of Labor regulations that already account precisely for the interaction between the internal review process and the internal review. Scalia. Well, why wouldn't equitable tolling apply? If you don't have enough time to prepare the court suit, you have just a month, let's say, and it's not your fault because you pursued the administrative proceedings vigorously and promptly. Why wouldn't it be? I think it very well might, Your Honor. I don't see any reason why that is not a perfectly adequate solution. These, these, how many, seven people, nine people, how many were they? Over 40 years, they probably had a way out. I think that's right, and I think. So you're pushing this start for the statute of limitations period, and your answer to the problem is, well, don't worry, if it ever turns into something that's going to be enforced, we won't enforce it, or it won't be enforceable without a judicial determination about equitable estoppel and all these other things that are very difficult to apply. Our position is that this limitations provision, like any limitation provision, whether contractual or statutory, is subject to equitable doctrines that might apply on the facts of a particular case. These are not novel doctrines that courts are unaccustomed to applying, and we don't think that they are particularly difficult. Ms. Carroll, what would you think if the State here just amended its statutes tomorrow and said, not 3 years, but 18 months? So for everybody, it's an 18-month period. It doesn't give people very long after the 12 or 13 months of the administrative review process is over. What should a court do then? Should a court strike the entire statute? Strike the State statute? Yeah, but, you know, should the court say, that's unreasonable, that goes too far? I mean, going back to the preemption analysis that Justice Alito referred to, I think that provision would clearly fall within the saving clause. And the thrust of this Court's ERISA-implied conflict preemption cases has been to ask only whether the State law purports to supplement or displace the exclusive remedial scheme under ERISA, and I don't think that provision would. Now, maybe there would be a new analysis we would have to ask, which is, does this provision provide a reasonable opportunity for full and fair review, and does it practically deprive claimants of the opportunity to obtain judicial review at the end of that period? And maybe we would have some of these. Kagan, I'm sorry, you know what, take it out of the statute context. Just say that the contract said 18 months, rather, so that's really what I meant. Was — is — what's a court to do with a contract that says that? I think — I think we would apply that same analysis of asking, has there been a reasonable opportunity for full and fair review, and has the claimant been deprived of the opportunity to seek judicial review? But it's 18 months. I mean, so, you know, the administrative review process takes about 12 months in most cases. Is 18 months enough? Yes. I think that would be a much harder case, because I do think — I think our experience with ERISA provisions generally does suggest that exhaustion can take, you know, usually about a year, maybe a little over a year. And so that would be a harder case. It's not what the laws of the vast majority of States do require, though, and it's not the provision that's in this policy. And I think just as there can be line drawing in that direction, there could be line drawing questions asked of — Well, but what's the rule of law — what's the rule of law that allows us to get rid of a contract provision that's set at 14 months or 15 months or 16 months and to leave this one? I — well, I — I don't want to — if I — if I suggested that I wanted to completely concede that, I misspoke, because I — I think it's a hard question. I'm not sure what the answer is. Yeah. No, I was — I was suggesting that I would like to — like, a 14-month? That would just seem unreasonable to me. Well, I think that's — I mean, going back to the Riddles-Barger decision and Wolf, this Court has long recognized the common law principle that contracting parties may agree to a limitations provision, it must be consistent with the statutory framework, and it must provide a period of time for suit that's not unreasonably short. And I think the Court could apply that. Here, your opponent is saying, I have a simpler answer. I mean, instead of having to worry whether 14 months is too long or 7 months is too short or a year and a half gives adequate time, instead of having to worry about that in difficult cases, I have a simpler idea. We'll just run the 3 years from the time the — the internal exhaustion is finished. Then you don't have to worry about it. You don't have to worry about totaling. You don't have to worry about all this other stuff. That's their point. Justice Breyer, the question before the Court is not what would be the best idea or the best, most simple model if we were writing on a blank slate. The question is, is this term in an ERISA plan, in a suit from which the Petitioner's rights flow from that plan and her cause of action seeks to enforce the terms of that plan? May that provision be excised from every plan in which it appears in all cases on a 5 or 9 cases in which its operation had to be addressed through the application of traditional equitable doctrines? Alito Why would employers with ERISA plans be hurt by the rule that the Petitioner is advocating going forward? Why wouldn't they just be then able to amend the plan, make the period for filing suit begin on the — at the end of the review process, shorten the period if — so as to bring it in line with basically what happened before, when the period began upon the proof of loss? I don't quite understand why going forward that is a disadvantage to employers. I do think that the current wording of the provision has a lot to recommend it, and it's why you see it used as the typical model in insurance. And here are a couple of the things. One is that — The current model being the proof of loss? Being proof of loss. Why does that prefer it? That is because from the moment the claim is filed, we know at the outset that the claim — the books can be closed on the claim for reserving purposes three years from the proof of loss date, whereas under a limitation period that does not commence until the conclusion of the administrative process, we — we won't know from the outset when the limitation period will run or not. And so this provision provides some certainty that the other type of provision  I'm not saying that the other type of provision doesn't. Ginsburg But in insurance contracts generally where there is this proof of loss as the trigger, there isn't a mandatory administrative — most States don't have this mandatory administrative review. Justice Ginsburg, that's actually not correct, and we've provided some examples at pages 20 to 21 of the red brief that show how these provisions do commonly work in the traditional insurance context. And what you commonly see is a limitation period, often about 12 months, that will run from the time of the insured loss, let's say the time of the fire in a fire insurance policy. What subsequently must happen within that 12 months is that the claimant must present proof of loss within the 12 months as the clock is ticking. Sometimes they must await the insurer's decision. Sometimes they simply have a waiting period. And then they have to file a suit. And that was the scheme that this Court discussed at some length in the Wolf case. And what that model is about is, I mean, I think we're all very familiar with the kind of Federal administrative scheme where there are several steps of administrative review followed by a judicial review step, where Congress writes a limitation period that's essentially a grant of time in which a claimant can proceed from one step to the next. But that's not the only model, and it's not the model that characterizes the insurance practice. What that model, the way that often works is there's a deadline out there in the future, and by that deadline, a claimant must complete the pre-litigation steps necessary and file their claim. That's the type of model that this Court also considered and enforced in the McMahon case. And there's nothing in the law that says one model versus the other is the only way a limitation period can ever be written. And in ERISA, Congress did not step in to decide what it thought the limitation period ought to be or how it thought it ought to work. It instead said, number one, we want to defer to State insurance regulators. Even though these provisions had long been on the books already, we want to defer to State insurance regulators to govern the content of insured plans. And number two, we want to defer to employers' decisions about the terms on which they want to enter into the voluntary undertaking of providing benefits. And it is a voluntary undertaking, and Congress, speaking about concerns about uncertainty and so on, the primary uncertainty that Congress was worried about and that would be visited on employers and insurers if this Court were to rule from Ms. Himeshoff would be that we don't want to be in a legal regime where every term in an ERISA plan is potentially unenforceable because someone can imagine a handful of five or nine cases which is unenforceable. Roberts, I would argue that if you have a new employer who is going to have a plan put together and say, well, I'm not going to do this unless the statute of limitations for claims runs from the proof of loss. And if you tell me it's got to run from the exhaustion of remedies, I'm just not going to give a benefit plan. That's an implausible scenario. I think that it's a broader point, however, in terms of the uncertainty that this would raise. To say that this provision should be excised from ERISA plans in all plans where it appears for all cases because of speculation about what might happen in some cases but does not usually happen, to say that that can be a basis absent any other anchor in the statute for judicially rewriting or ignoring plan terms would be a tectonic shift in the law of ERISA in terms of Congress's goal of making sure that plans would be enforced as written, particularly in a cause of action under section A-1b, which is a suit not to defeat the plan terms but to enforce the plan terms. Sotomayor, what about this? Sotomayor, what would your argument be if this – if ERISA said there is a minimum 3-year statute of limitations? Would your argument be identical today, or would that be a clearer demonstration that Congress intended that the background principle that that starts from the exhaustion of administrative process be incorporated? Under the principle this Court recognized in Riddles, Barger and Wolf, parties to a contract may agree to a limitation period that differs from one in the governing scheme. So, for example – Sotomayor, do you require an explicit agreement that the start is going to be different as well? An explicit agreement that – You can shorten or lengthen a limitations period, but this is not about shortening or lengthening a limitations period. This is about changing a start time for the limitations period. Do you require something explicit, an explicit statement as to that as well? Your Honor, I – if I am understanding the question correctly, I think if you – if you begin from the premise, as I think all parties do, that contracting parties may agree to the length of the limitation period, a limitation period, a length of a limitation period can't be defined or expressed without reference to some starting point. It's not the norm to say, oh, we're going to have a 3-year period. You would say it's 3 years from some date, it's 3 years from proof of loss, or 3 years from notice, or 3 years from discovery, or 3 years from my decision to go on. Sotomayor, do you think Congress would only legislate in that way? I'm sorry? You think Congress would only legislate that way? I – I – Do you have any examples of that, of Congress saying the limitations period starts at the end of the administrative process and is for 3 years or 1 year? Well, typically, Congress writes limitations periods that run from the time the cause of action, quote-unquote, accrues, which is why this Court usually has to decide when the cause of action accrued. But that's not always the case. So in the Dodd case, for instance, the limitation period in the Federal habeas statute is not drawn to anything having to do with accrual, but to a menu of a series of particular events. And the same thing is true under this provision, where the parties, rather than defining the limitation period by reference to the accrual of the cause of action, they've defined it by reference to a particular point in time, which is a model that is common in the insurance practice and has been widely used in ERISA plans since ERISA's enactment. Do you have any position on whether the executive can prescribe when suit must be brought? I – here's how the Department of Labor has threaded that needle, and that is in the regulations that say things like, if an ERISA plan provides for additional voluntary appeals beyond the minimum that's necessary, then the plan must agree to not to assert any defense based on the statute of limitations or timeliness. And so I think that sort of approach is probably something that they could do. I mean, I think that probably avoids the question that Your Honor was asking earlier. I think, you know, as far as the DOL's regulatory authority more generally, I think there is also the looming question about whether the department has statutory authority to adopt a regulation that would have the effect of preempting State law. But leaving those authority questions aside, I think the only other question is whether the department could compile a factual record that would provide a non-arbitrary basis for taking this action. I'm not sure that they could, but it's certainly within their right to initiate notice and comment rulemaking. Ginsburg. Ms. Carroll, did I understand you before to be taking the position that even if Congress enacted a statute of limitations with an accrual rule, that that might not be effective as against a plan provision that provides for the trigger being proof of claim? I think it would be a question of statutory interpretation there, whether the inclusion of a particular statute of limitations was meant to limit contracting parties' ability to agree to a different one. And I think if you had a situation where, you know, let's say the Court in this case upholds the plan's provision and then Congress amends the statute to say, you know, we really think this doesn't make sense and we want to have a different rule, I think there would be a strong argument that that statute was intended to foreclose, as Congress may do, the right of parties to contract around that rule. Scalia. And they're going to do this for a lobby of nine people, are they? I wouldn't expect so. The question answers itself. The question I would like to know is if you know empirically roughly what are typical statutes of limitations in this area. The basic rule is State law unless contract. Is that right? I think that's right. And how long on average? Do you have any idea of how long people normally have to bring their action? Well, the three years from proof of loss is the standard provision. So that's the standard provision in contracts. Yes. In certain types of insurance. Well, I mean, in certain types of insurance contracts. So Larissa is all over the place. I wouldn't even know where to start. Does the Department of Labor keep statistics on this or what? I have not. We have looked far and wide for empirical information about this, and the best I can do is to refer, Your Honor, to page 29 of the amicus brief for the American Council of Life Insurers, which does collect a little bit of empirical information about the exceeding rarity with which this issue ever arises in Larissa cases and the typical length of time that's required to exhaust. It's hard to say what you mean by the exceeding rarity. I suspect there are more than nine cases where people are looking at the running of the statute of limitations and they're saying, well, I've got to sue if I don't get this, and when do I have to hire a lawyer? And the last thing you want in this process is to get lawyers involved at the claim procedure, and they say, well, there's only 10 months left, I'd better hire a lawyer, you know, and instead of the informal resolution, you suddenly got lawyers involved. Why isn't that a legitimate concern? On the other hand, if you wait until the claim is exhausted, you may not need the lawyer at all, but if you don't know when that period is going to run, you better get one sooner rather than later. Well, of course, in this case, the Petitioner did have counsel from relatively early on in the process. Well, she was very prudent. Pardon? I mean, she didn't know when it was going to run. You better get somebody in there right away. I mean, the typical layperson who's got a claim for $9,000 in disability benefits or whatever, you know, may not know. It's better to get a lawyer to tell her. It just seems to me that you keep it as an informal resolution, inexpensive resolution process if you tell somebody, look, you don't have to worry about getting a lawyer until we tell you whether we're going to deny your claims or not. And, Your Honor, that easy, inexpensive process is how it works in the vast majority of cases. I think something like 80 percent of disability claims are granted through the internal review process without there ever being any need to go to litigation. And I think the reason why. Roberts, I'm not talking about the need to go to litigation. I think there are probably more than nine people who had to hire lawyers before they even had a decision. Oh, I think that's right. I mean, I think our best sense is that there's something around the order of about a quarter to a third of cases in which claimants are represented by counsel. But I think that the question that Your Honor is posing of the claimant who's approaching some point where they're wondering what to do, that's going to be a claimant who's looking at a deadline for filing suit that is probably still a year and a half or two years away in typical cases. And so the legal system and doesn't know, well, how long does it take, you know, to get a complaint ready? And I don't know, it just seems to me that the problem of a statute of limitations that runs before the claim even accrues requires people to worry about their legal rights in a way that the simple rule about when your benefits are denied, that's when the period starts running. Well, I mean, granted, all statutes of limitations do impose some obligation on would-be plaintiffs to take steps to protect themselves. That's true of all limitation periods, no matter how they're drawn. Kennedy, it's fair to say, in other words, that it's typical in the insurance industry that statute of limitations run from proof of loss. In the group benefit plans of the type that are subject to ERISA, that is very common. That's the standard term. Going back to the older products like fire insurance, life insurance, and so on, it would often run before proof of loss from the actual insurance. From occurrence. Occurrence. Exactly. Exactly. And with the reason why it's different in a long-term disability plan is that you have to make sure that the disability is actually a long-term disability. And so that's why you have these elimination periods followed by a proof of loss deadline, because there has to be a sustained disability in that interim period. And so you don't run it from an earlier point because it's not clear that the insured event has occurred until you've come to that point. Well, you started to answer this question before, but I'm not sure I understand the answer. Why this proof of loss model is so attractive in the disability insurance field? You said that it provides a clear date on which you know you can begin to count. But so does an accrual rule. So maybe you could explain a little bit more. I think what I meant by that was that under what I take, Your Honor, to mean by an accrual rule, meaning a limitation period that runs at the conclusion of the administrative process, we don't know at the time that the claim is initially presented when that's going to be. Is it going to be six months from now, a year from now, a year and a half from now? And so just simply for reserving purposes, it helps to have a greater sense of certainty about the timing of potential claims and when we can close the book. It's the doctrine of exhaustion is a judge-created doctrine. Correct. And therefore, you cannot in your contract contract yourself around it. You can't get out of it. No. So what this would require would be to say that that judge-created doctrine requires exhaustion to take place before the accrual of the statute of limitations. End of opinion. For the reason of certainty, for the reason of uniformity, for the reason of avoiding through hiring lawyers, et cetera, an interference with the voluntary nature, simple nature, and hopefully pre-legal involvement nature of that exhaustion process. All right? Now, the reason what trouble would that cause? What trouble in the industry would that cause? That would cause trouble for every employer, plan sponsor, insurer that has an ERISA plan. And here's why. Since ERISA's enactment, this Court has never held that in a suit to enforce the terms of an ERISA plan, those terms can be thrown out the window because we worry that they might be unfair in some case that we can speculate about. That would be a very significant shift in how this Court enforces ERISA plans, and it would undermine Congress's goal of wanting to assure employers and plan sponsors that the terms on which they agree to provide benefits will be respected. Scalia I thought that this contract required exhaustion of administrative remedies before you can sue. Isn't that in the contract? Sherry It is. Scalia So it's not a judge-created doctrine. Sherry It's the same. Scalia I mean, we create it in other instances where there are agency, you know, requirements to go through the agency, and we make it up. But here it's in the contract, isn't it? Sherry It is in the contract. Scalia So we're not as entitled to fiddle with it as much as we are when it is our creation, I suppose. Sherry Well, but even when it is the Court's creation, it is not without exceptions. It is not jurisdictional. We like exhaustion. We think that internal review is a very successful and workable scheme that resolves the vast majority of cases. Kagan Ms. Carroll, please tell me if I'm wrong, but even if a contract does not have an exhaustion requirement, courts have required exhaustion. Sherry That's correct for good reason. Although, with exceptions, it's not. Kagan Courts have required it even though the statute doesn't say so. Sherry That's true. Kagan It's an extra-textual requirement that courts have made up irrespective of what the contract provides. Sherry That's true, but it is not one that required setting aside or defeating any term of an ERISA plan. And that's the key distinction. And as the party that's come forward to say that even though I'm trying to enforce this plan, I nevertheless want to jettison the plan terms, I think the Petitioner bears a burden to say there is some anchor in the statute or some basis in evidence or experience to say, not simply to speculate that there is a potential clash with the remedial scheme, but there is one. Kagan But I think what Justice Breyer was suggesting, that maybe given that we have this sort of judge-made rule of exhaustion, that the courts just did a sort of half job of it, that they also should have put the statute of limitations that makes that it doesn't produce unfair, bad outcomes. Sherry I think if there is a question as between a judge-made doctrine and the terms of a plan as to which should give way, I think Congress has made clear that it is the terms of a plan that ought to control, as has the courts made clear. Kagan But Congress was dealing, you know, Congress passed ERISA before this exhaustion requirement came into play. So it's a little bit hard to read into anything, to read Congress's silence in the normal way here, because Congress didn't think that there was going to be this exhaustion requirement. And the courts put it on later. Sherry I'm not sure about that. I think the courts that found an exhaustion requirement did so in an act of statutory interpretation and found that to be consistent with Congress's intent in the statute. Roberts Did I understand you earlier to say we have not had a case where we have overridden plan terms in ERISA plans? Sherry In a suit under section 1132a1b to enforce a plan term, there is no decision in which this Court has said we can simply ignore plan terms. Rather what the Court has said is that we have overridden plan terms in ERISA plans. Roberts Well, I didn't simply ignore. I mean, is there any in which we have overridden plan terms? Sherry No. Roberts No. Sherry No. There are no. So there have been plenty of cases where people have asked to do so and where this Court has had to say, for example, in the Amara case, in the McCutcheon case, in the Kennedy case, where the Court had to consider situations where maybe we should come up with a judgment, sort of common law model that seems like a better rule. And the Court said, no, we're not going to do that, because this is a situation this is a context where Congress wanted plan terms to control. Here the plan terms clearly bar the suit. There's no allegation that the administrative plan was. Breyer Look, you agree that we would overturn the plan term if the plan term was no exhaustion. Sherry I'm sorry? Breyer The courts would overturn a plan term which plan term said no exhaustion. Sherry I will. I doubt very much you'd ever encounter a plan term. Breyer Of course not, because what we're trying to do is employers are very cooperative and we're trying to work out a system with the exhaustion thing that will not destroy ERISA plans or something. It's which is the best. And that's why I phrased it in terms of an explanation of the exhaustion requirement. Sherry I suppose if you had an intransigent plan that just said, no, we refuse to entertain your attempts to appeal, that is a situation where a court would apply one of the futility exceptions to exhaustion. So I don't think that would present an issue.  Thank you, counsel. Just a few brief points.  I'm sorry, you have four minutes left. Just a few brief points. Thank you. First of all, this Court has in Unum v. Ward refused to enforce a plan term that would not destroy ERISA plans. But I think the bigger point here is that provisions that tamp Unum v. Ward, Your Honor, the bigger point here is that provisions that tamper with ERISA's enforcement scheme, as this provision does, are inconsistent with ERISA's remedial structure. By Respondent's own argument, this is not an enforce-the-contract provision. This is a sometimes-enforcing-the-contract provision that is itself automatically subject to a reasonableness override, in which courts can and are expected to actually decline to enforce the plain language of the provision in cases in which it finds under a host of fact-specific questions, the provision is either unreasonable or the plan has stopped from enforcing it or has waived it. And that, we submit, Your Honor, is the key defect with this provision, because it puts courts right in the center of policing what should be a private process. If plans are – if courts are able to look back and determine whether a plan's conduct in the internal process was unreasonable, was dilatory, was unreasonably delayed, then all of a sudden, the private benefit resolution process, which this Court has said, as have all of the lower courts that have looked at it, is designed to be non-adversarial, flexible, and private, turns into something that looks like none of those things. It turns into a process in which lawyers get involved early, in which courts get involved early, and in which these plan terms are subject to revision or overrides in a host of cases, and in which both plans and claimants have no idea ex ante whether or when this provision will be enforced. A rule running from final denial, which I should say is the consistent rule across the board in every Federal statutory regime, going back from the beginning of the law that we have been able to find, runs the limitations clock from when you can file the claim in court. Alitono, if we agree with you, would the Federal courts and maybe ultimately this Court in the end have to specify what the statute of limitations is, the length of time? So we have a bunch of cases from different courts, and one circuit says two years is the shortest you can have. Another one says, no, you can have a year. Another one says, well, you could have nine months. How would this ultimately have to be? Wouldn't we be driven to that? I think not. I think plans have absolute authority to themselves specify the length of the period. We see this. Plans. Now, they specify a lot of different lengths, and then they are all challenged and different ones are challenged in different courts, and the courts have to say what's reasonable, and there's no State statute of limitations that applies to this situation. So it all comes down just to a question of reasonableness. I think that's – I think two answers to that, Your Honor. First, I don't think that's actually correct. Most plans that run the length only do about a one year from final denial. As Respondents themselves have explained, and we agree, courts across the board find one year in almost every context to be reasonable, and so it would automatically be enforced. But the difference also is in the type of reasonableness inquiry that a court would have to apply in the case that you're suggesting, which is not a fact-specific inquiry based on how long the parties took to pursue this internal process. It's simply an objective question. Is the amount of time on the limitations clock enough to allow a plaintiff to file her claim in court? And one month – excuse me, one year from final denial would absolutely be enough would provide all parties under ERISA with the certainty that they have to file their claim. Thank you, Your Honor. Thank you, counsel. The case is submitted.